## FLYNT et al. v. HASTINGS.

No. 16982—Opinion Filed Nov. 23, 1926.

(Syllabus.)

1. **Indians—Validity of Overlapping Agricultural Lease on Full-Blood Surplus Allotment.**

When, under the provisions of the Act of Congress of May 27, 1908, a full-blood Mississippi Choctaw Indian leases her surplus allotment for agricultural purposes before the expiration of an existing lease for a term to begin in the future, it amounts to a conveyance of the reversion and is prohibited by the restriction, but where there is a showing of necessity for making an agricultural lease shortly before the expiration of an existing lease in order to regulate the course of cultivation to be pursued the subsequent year, the same will be sustained in equity.

2. **Same—Intent of Statute.**

The said Act of Congress, governing such leases, was not intended and did not restrict the leasing of such lands to a person who actually cultivated the lands.

Error from District Court, Marshall County; Porter Newman, Judge.

Action by G. R. Hastings against A. J. Flynt and others for possession of real estate involving a surplus allotment of a Mississippi Choctaw Indian. Judgment for plaintiff, and defendants bring error. Reversed.

McClendon & Hatcher, plaintiffs in error.

George E. Rider, for defendant in error.

RILEY, J. This appeal is by the defendants below. Reference is made to the parties as they there appeared.

The plaintiff, Hastings, alleged he was entitled to possession of a surplus allotment of Lucy Scott, a full-blood Mississippi Choctaw Indian, by virtue of a lease from Lucy Scott dated March 2, 1925; that Flynt and his codefendants were in unlawful possession of said premises.

On February 25, 1920, Lucy Scott executed an agricultural lease to R. H. Chowning upon said lands; by the terms of this lease the same expired February 24, 1925. Before the expiration of said lease and on December 1, 1924, Lucy Scott executed another agricultural lease to said surplus allotment to one C. A. Vandervort; said lease by the terms thereof commencing at the future date of February 26, 1925, and being for a term of four years. Said lease was assigned by lessee, Vandervort, to defendant Flynt. This lease, the court below, by its judgment, found to be void.

On March 2, 1925, and after the termination of the Chowning lease above mentioned, Lucy Scott executed an agricultural lease to said lands to plaintiff, Hastings, for a term of five years beginning on the date of execution thereof and expiring March 1, 1930. The validity of this lease was by the judgment below upheld, and Hastings succeeded to possession as against Flynt. Flynt went into possession of the lands in December, 1924, before the expiration of the Chowning lease on February 24, 1925, and prior to the commencement, on February 26, 1925, of the lease held by him by assignment from Vandervort.

The trial court found "that it is necessary to lease lands for agricultural purposes as early as the first of December in order to

properly direct the course of cultivation for the ensuing year." It is admitted that the evidence supports this finding.

Flynt relied on the lease executed and assigned on the said date of December 1, 1925. the terms of which began on February 26, 1925. However, the court further found that the Vandervort-Flynt lease "was executed as a purely commercial trade and that it was not executed in contemplation of assisting agricultural development on the lands in controversy."

The court below made conclusions of law as follows:

"1. That no lease of a full-blood Indian can be sustained in equity where its term is over five years. to begin in the future. or is an overlapping lease. but equity may sustain an overlapping lease when it was executed, where it was bona-fidely executed for the purpose of promoting agricultural development on the lands of the allottee, or where a lease to begin in the future is executed with the bona fide intention of promoting the interest of agriculture upon the allottee's land. Therefore. applying this rule to the facts in the case at bar:

"2. The court is of the opinion that the lease of the defendants was not executed in view of the promotion of the agriculture, and that it is void; and

"3. That the lease of the plaintiff. Hastings. is a valid. subsisting lease on the lands in controversy."

Vandervort. the lessee, testified that he was in the mercantile business: that the way he was interested in getting the lease was that Emil Scott, husband of Lucy Scott. the allottee. owed him $100 or $112, and that he was trying to get this money, and that this indebtedness was taken care of when the lease was made.

The rule governing the validity of agricultural leases executed under circumstances such as these presented here is as follows: The lease. if executed during the existence of prior valid lease. to be valid, must be made for (1) a fair rental; (2) near the termination of the existing lease; (3) it must not extend the term more than five years from the date of the last lease; (4) the leasing must be necessary to control the course of cultivation to be pursued. Yates Jones. 92 Okla. 64. 217 Pac. 864; U. S. Noble, 237 U. S. 74, 35 Sup. Ct. 532. 59 . Ed. 844; Gladney v. Richardson, 44 Okla. 4, 143 Pac. 683: Hudson v. Hildt. 51 Okla. 59. 151 Pac. 1063: Brown v. Van Pelt, 64 Okla. 109, 166 Pac. 102; Carden v. Humble, Okla. 165. 184 Pac. 104; Taylor v. Callahan. 82 Okla. 67. 198 Pac. 487; Walker v.

Holmes, 91 Okla. 64, 215 Pac. 1065; Chism v. Majors, 92 Okla. 45, 217 Pac. 465; Hull v. Morris, 97 Okla. 246, 223 Pac. 361.

We observe no contention worthy of note regarding the first three features of the rule above. The decision in the instant case, as presented. rests upon the fourth provision of the rule, to wit: "The leasing must be necessary to control the course of cultivation to be pursued." The lessee and assignor, Vandervort, was, he said. interested in settling an account by taking the lease. Vandervort assigned the lease to Flynt on the day he obtained it, thereby obtaining value from it, which value, in the taking and in the assignment, was necessarily based upon its agricultural worth. Then the agricultural worth must have been given consideration in the execution and assignment of the lease. Certainly the lessee, Vandervort, at the time of leasing. should be considered as having taken cognizance of the value of the thing he purchased. and that value was the composite whole of all the attending elements or circumstances as they then existed. One of these attending elements was the fact that the leasing was necessary to control the course of cultivation to be pursued. The primary, impelling consideration of practically all lessees in securing agricultural leases, whether they intend tilling the soil in person or otherwise, is to get wealth thereby and therefrom. whether or not the collection of a debt enters into the transaction as an immediate consideration.

The Act of Congress of May 27, 1908, governing such leases, was not intended to restrict the leasing of such lands to a person who actually cultivated them himself. The act was made to protect the Indian. Chenoweth v. Deavers. 119 Okla. 74, 247 Pac. 982. There is no restriction contained in the act as to who the lessee shall be, and certainly none should be read into it.

There was testimony that it was necessary in the locality where this land was situated to take a lease as early as December 1st. for the purpose of directing the course of cultivation of the lands. The court below made findings to this effect.

We think the defendants entitled to judgment upon the facts proven. The judgment of the trial court is reversed, with directions to render judgment for the defendants.

NICHOLSON, C. J., BRANSON, V. C. J., and HARRISON. MASON, PHELPS, LESTER. and HUNT, JJ., concur.

Note.—See under (1) 31 C. J. pp. 518, 519, §87. (2) 31 C. J. p. 519, §87 (Anno).