### HARLEY et al. v. McCASLAND.

No. 21372. Opinion Filed Feb. 21, 1933.

H. B. Lockett, for plaintiffs in error.

Womack, Brown & Cund, for defendant in error.

BAYLESS, J. T. H. McCasland instituted an action in the district court of Stephens county against A. N. Harley and others for the possession of certain real estate and for damages for the wrongful detention thereof. Judgment was for McCasland, and Harley appeals. The parties will be referred to in this opinion in the order in which they appeared in the trial court.

The facts involved in this matter are very simple and were all stipulated to, except some additional testimony on the part of Harley. The real estate involved was allotted to Dora Hall, a full-blood Choctaw Indian, as a part of her surplus allotment. On September 20, 1922, Dora Hall executed a five-year agricultural lease to R. H. Brown. In 1924, Brown assigned this lease to A. N. Harley, the defendant herein, and Harley thereupon went into possession of the real estate. This lease was to end September 20, 1927. In the month of February, 1927, while Harley was in possession of the property, he entered into a contract with Dora Hall by which she leased to him this real estate for a period of five years commencing February 15, 1927, for the sum of $120, which

was paid to her in full. The parties in this lease contract declared the lease made to Brown and assigned to Harley to be null and void and canceled by the parties. On March 5, 1928, Dora Hall died intestate, leaving a husband and two children as her sole and only heirs. On March 5, 1928, the husband conveyed his interest in this real estate to I. C. Sprague, and on June 18, 1928, the children conveyed their interest to the said Sprague, who on the same day executed and delivered to McCasland a warranty deed to the entire tract. On September 18, 1928, McCasland instituted this suit without previous notice to terminate the tenancy.

The trial court held the lease, under which Harley is claiming possession, void, because it overlapped the former lease. Harley makes some effort in his brief to contend that the second lease was made sufficiently near the termination of the first lease for the purpose of regulating the course of agriculture, which is a recognized exception to the prohibitory part of section 2 of the Act of Congress of May 27, 1908. We do not view this transaction in this light, because the former lease was not permitted to run its course, but, according to the new lease and the proffered evidence of Harley, the old lease was canceled and the new lease put into effect immediately and not at the date of the termination of the original lease. Section 2 of the Act of Congress of May 27, 1908, reads as follows:

"That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee, if an adult, or by guardian or curator under order of the proper probate court, if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal."

This court and the Supreme Court of the United States have stated the spirit and intention of this act in the following cases: Whittham v. Lehmer, 22 Okla. 627, 98 P. 351, and Hudson v. Hildt, 51 Okla. 359, 151 P. 1063, as follows:

"* * * and also in our judgment the spirit and intention of the act goes to the extent of precluding the allottee from leasing his land in any manner, so that on the expiration of five years from any date, after the beginning of the term of a lease granted, he cannot have it free, clear and unincumbered"

—and in Chenoweth v. Deavers, 119 Okla. 74, 247 P. 982, it is said:

"* * * The holdings of this court do not

appear to be based primarily upon the period of time covered by the two leases, where the latter one is claimed to be an overlapping lease, but are based rather upon the right of the parties to contract with reference to the lands at a time when the lessor is excluded from possession by a valid and subsisting lease * * *"

—and in United States v. Noble, 237 U. S. 74, 35 Sup. Ct. Rep. 532, 59 L. Ed. 844, it is said:

"The allottee, as we have seen, is under an absolute restriction, with respect to his reversion, for a period of 25 years from the date of his patent. In the light of this restriction, and of the governmental policy which induced it, there is sound reason for construing the power as not authorizing anything more than a lease in possession, as well understood in the law."

We are not called upon to say whether the second lease was made for a fair consideration, at a time sufficiently near the expiration of the lease in force for the purpose of regulating the course of agriculture, so as to bring the second lease within the exceptions of the above rule, because the parties canceled and abandoned the first contract before its normal termination, and attempted to execute a new five-year contract. We hold that this is a violation of the spirit and intention of the Act of May 27, 1908, as expressed by the cases before cited.

The defendant says, in support of his second proposition, that, conceding the second lease to be void, the allottee received the entire rental for the five-year period covered by the second lease during her lifetime, and permitted him to remain in possession of the land after both the cancellation and normal termination of the first lease, by reason of which he became her tenant at will, and was entitled to notice of the termination of the tenancy prior to the institution of suit. This contention is based upon Tate v. Gaines. 25 Okla. 141, 105 P. 193, and other cases. This is ordinarily the rule, but it does not apply to transactions involving restricted Indian allotments. The Supreme Court of the United States, in the case of Bunch v. Cole, 263 U. S. 250, 68 L. Ed. 290, has held an overlapping lease to be absolutely void and as being incapable of being made the basis of any right whatsoever, when it said:

"These leases were made in violation of a congressional prohibition. They were not merely voidable at the election of the allottee, but absolutely void and not susceptible of ratification by him. Nothing passed under them, and none of their provisions could be taken as a standard by which to measure the compensation to which the allottee was entitled for the unauthorized occupancy and use of his land."

In addition to this we have held in the case of Hancock v. Maurer, 103 Okla. 196, 229 P. 611, that a tenancy at will is terminated by the death of the landlord, and the person in possession becomes the tenant at sufferance of the new owner until the new owner expresses his consent for the continuing possession. McCasland, the successor in title to the heirs of the deceased allottee, instituted this suit within a sufficiently reasonable time after the death of Dora Hall to express an intention on his part not to acquiesce in the tenancy of Harley. Under the authority of Hancock v. Maurer, supra, no notice was necessary to terminate a tenancy at sufferance.

The defendant, being in possession of the land under a void contract, and having retained possession thereof, must pay to the plaintiff the damages awarded by the trial court, which seem to have been based upon a stipulated reasonable rental basis.

For these reasons, the judgment of the trial court is affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL and OSBORN, JJ., concur. ANDREWS, McNEILL, BUSBY, and WELCH, JJ., absent.